1

2

3

4

5

6

7

8                                 UNITED STATES DISTRICT COURT

9                              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    KENNETH GODOY,                                    No.  2:20-cv-01938 DAD KJN P

12                        Plaintiff,

13              v.                                      FINDINGS AND RECOMMENDATION

14    M. SON, et al.,

15                        Defendants.

16

17    I.      Introduction

18              Plaintiff Kenneth Godoy, a state prisoner proceeding pro se and in forma pauperis, filed a

19    civil rights action seeking relief under 28 U.S.C. § 1983.  (ECF No. 19.)  In the first amended

20    complaint, plaintiff raises an Eighth Amendment deliberate indifference to serious medical needs

21    claim against Defendants Son, Hlaing, Bobbala, Ikegbu,[1] and Austin.  (Id.)  Defendant Bobbala

22    filed a motion to dismiss, and Defendants Son, Hlaing, Ikegbu, and Austin filed a separate motion

23    to dismiss.  (ECF Nos. 43 & 44.)  Plaintiff filed an opposition to the motions.  (ECF No. 53.)

24    Defendant Bobbala filed a reply.  (ECF No. 54.)  For the reasons that follow, defendants' motions

25    to dismiss should be granted.

26

27

28    _____
      [1] Plaintiff refers to this defendant as "Ikabo" in the amended complaint.

                                                    1

II.    The Complaint

Plaintiff's amended complaint is based on the medical treatment he received while incarcerated at California Medical Facility, California State Prison at Sacramento, and California State Prison in Folsom.  Defendants Son, Hlaing, and Ikegbu are medical doctors with the California Department of Corrections and Rehabilitation (CDCR).  (ECF No. 19 at 10-11.) Defendant Bobbala is the Chief Medical Executive Officer for CDCR.  (Id. at 11.)  Defendant Austin is the Chief Medical Officer and reviewing authority for health care grievances at CDCR. (Id.)

On July 25, 2019, plaintiff experienced low back pain while in the recreational yard.  (Id. at 12.)  He described his pain as "bone on bone" "causing mild pain."  (Id. at 12.)  The next day, plaintiff was in severe pain and used a wheelchair to visit the medical clinic.  (Id.)  Defendant Hlaing ordered an x-ray of plaintiff's lower back, and the nurse discharged him with Tylenol and a follow-up appointment scheduled on Monday.  (Id.)  On July 27, officers assisted plaintiff with getting into bed because the pain was worse and impacted his ability to stand and walk.  (Id. at 13.)  Plaintiff asked to see a doctor, but his request was denied, and Defendant Hlaing ordered a Toradol shot for the pain.  (Id. at 13, 27.)

On August 1, 2019, plaintiff saw Defendant Son and explained his symptoms.  (Id.)  Son diagnosed him with degenerative joint disease and prescribed Tylenol, capsaicin cream, and physical therapy.  (Id. at 13, 27, 30.)  "Plaintiff told doctors the pain is inside not muscles."  (Id. at 13.)  He alleges that the doctors refused to believe that it was not degenerative disc disease and did not give him stronger pain medication.  (Id. at 14.)  The Toradol shot helped a little.  (Id.) Plaintiff continued to "suffer pain in his lower back and legs" and "had to be taken in a gurney several times and by wheelchair. The pain was a 10 plus."  (Id.)  Plaintiff claims that, although the doctor was notified of his pain, he never saw the doctor and "was told nothing is wrong to rest and take Tylenol and drink water."  (Id.)

On August 13, 2019, plaintiff saw Defendant Hlaing for follow up and to get a steroid shot.  (Id.)  He arrived in a wheelchair because he could not walk.  (Id.)  Hlaing allegedly told plaintiff that he was overweight, and that it was contributing to his pain.  (Id. at 14-15.)  Plaintiff

2

received a steroid shot, which numbed his back, but it "still hurt deep inside." (Id. at 15.)  The doctor told him to walk back to the unit,[2] which he did using the yard wall, resulting in pain two days later.  (Id.; see also id. at 27 "saw the PCP 8/13/2019 and was provided with a 1% lidocaine and triamcinolone 40 mg injection which allowed you to walk out of the exam room after arriving in a wheelchair."))  Plaintiff requested an MRI, but the doctors told him he needed to go to physical therapy first.  (Id. at 15.)  He also submitted numerous 7362 forms regarding his pain.  (Id.)  Plaintiff was given another Toradol shot, sick call slip, and patient discharge papers.  (Id.)

Around late August or early September 2019, plaintiff was transferred to state prison in Folsom and saw Dr. Burges.  (Id. at 15, 27.)  Dr. Burges said plaintiff has a high risk of falling and "likely has a herniated disc and pinched sciatica," gave him a cane, pain medication, and a consultation for physical therapy.  (Id. at 15.)  Plaintiff requested an MRI, which Dr. Burges ordered.  (Id. at 15-16.)  While waiting for the MRI and physical therapy order to go through, plaintiff also received a back brace.  (Id. at 16; see also id. at 27.)

On September 17, 2019, plaintiff was transferred to California Medical Facility.  (Id. at 16.)  "Due to [his] transfers between institutions, [his] physical therapy and [his] MRI is still pending.  A request for the status of the MRI and physical therapy was submitted to HCARN at CMF so that [he] may see the PCP for these orders."  (Id. at 27.)  On October 2, 2019, plaintiff was seen by PCP for follow-up, and he ordered plaintiff a walker because plaintiff had "discomfort using a single point cane.  The PCP also added a muscle relaxant medication, methocarbamol, for muscle spasm/pain."  (Id. at 38.)

Plaintiff filed CDCR 602 Health Care grievances for his back pain.  (Id. at 16.)  Defendants Bobbala and Austin responded to his grievances.  (Id.; see also id. at 25-27, 37-39.)  Plaintiff claims they had an "institutional level authority to intervene in the matter although it is not under their attention not doing anything regarding to change of policy, regulation or anything or any other matters such as [training] in effect allows these types of violation to [adequate] health care deliberate indifference, and wanton infliction of pain to continue."  (Id. at 17.)

---

[2] Plaintiff also alleges that he could not use a wheelchair inside the unit because it was a sunken day room with stairs.  (Id. at 14.)

3

On October 11, 2019, plaintiff saw Defendant Ikegbu for a follow-up visit.  (Id.)  Plaintiff explained that he was having severe pain down his legs and requested an MRI and referral to a specialist.  (Id.)  Plaintiff alleged that Ikegbu said there is nothing wrong, that he had degenerative disc disease, and that he was exaggerating his pain.  (Id. at 17-18, 38.)  Defendant Ikegbu told him the MRI was ordered and encouraged plaintiff to be more physical and to drink more water.  (Id. at 18.)  Plaintiff had another medical visit on October 16, during which Ikegbu increased his dosage for nortriptyline and added a topical nonsteroidal anti-inflammatory drug, noting "that all available imaging studies at that time were showing degenerative joint disease, with a pending MRI."  (Id. at 38.)

Plaintiff had MRIs on October 24, 2019, October 25, 2019, and December 3, 2019, with a repeat MRI to be scheduled after completion of antibiotic therapy.  (Id. at 18, 39.)  The first MRI showed plaintiff has L5-S1 discitis osteomyelitis, paraspinal and epidural infection, moderate right and severe left neural foraminal narrowing present.  As a result, plaintiff was transferred to the San Joaquin General Hospital for admission and treatment.  (Id. at 18-19.)  In the hospital, he underwent many tests, and the doctors explained that the infection was eating his spine and disc and collapsing his nerves.  (Id. at 19.)  When plaintiff asked if the infection could have been detected sooner, one hospital doctor said yes.  (Id. at 20.)  In August 2020, plaintiff was informed that he needs spinal surgery to fix his back, but he still may be confined to a wheelchair for life.  (Id.; see also id. at 48-49.)  "Plaintiff asked doctor could the doctor at the prison (Defendants) seen the collapsed L5-S1 in xray he said yes."  (Id.)  Plaintiff alleges that the doctor stated that the prison doctors took too long to treat the infection.  (Id. at 20-21.)

Based on these factual allegations, plaintiff alleges that defendants were deliberately indifferent to his medical needs and inflicted cruel and unusual punishment on him in violation of the Eighth Amendment.  (Id. at 22.)  He also asserts that Bobbala and Austin failed to intervene and correct the misconduct.  (Id.)  Plaintiff seeks declaratory, injunctive, and monetary relief.  (Id. at 23-24.)

In a motion to dismiss, Defendant Bobbala argues that plaintiff fails to allege Bobbala's personal involvement in plaintiff's medical treatment, and his claims amount to "no more than a

1   simple disagreement between medical professionals."  (ECF No. 43 at 2, 5-9; <u>see also</u> ECF No.

2   54.)  In the other motion to dismiss, the remaining defendants assert that plaintiff has not

3   demonstrated that they were deliberately indifferent to his medical needs, and the complaint

4   merely sets forth a disagreement with the course of treatment.  (ECF No. 44-1.)  In the alternative,

5   defendants claim they are entitled to qualified immunity.  (<u>Id.</u>)

6   III.    <u>Legal Standards for Motion to Dismiss</u>

7         Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for motions to dismiss for

8   "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In

9   considering a motion to dismiss pursuant to Rule 12(b)(6), the court must accept as true all factual

10  allegations in the complaint, <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007) (per curiam), and

11  construe the pleading in the light most favorable to the plaintiff.  <u>Jenkins v. McKeithen</u>, 395 U.S.

12  411, 421 (1969); <u>Meek v. County of Riverside</u>, 183 F.3d 962, 965 (9th Cir. 1999).  Still, to

13  survive dismissal for failure to state a claim, a pro se complaint must contain more than "naked

14  assertion[s]," "labels and conclusions," or "a formulaic recitation of the elements of a cause of

15  action."  <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555-57 (2007).  In other words,

16  "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

17  statements, do not suffice."  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009).  Furthermore, plaintiff

18  must allege enough facts to state a plausible claim for relief.  <u>Twombly</u>, 550 U.S. at 570.  "A

19  claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

20  the reasonable inference that the defendant is liable for the misconduct alleged."  <u>Iqbal</u>, 556 U.S.

21  at 678.

22        "As a general rule, a district court may not consider any material beyond the pleadings in

23  ruling on a Rule 12(b)(6) motion."  <u>Lee v. City of Los Angeles</u>, 250 F.3d 668, 688 (9th Cir. 2001)

24  (internal quotes and citation omitted), <u>overruled on other grounds by</u> <u>Galbraith v. County of Santa</u>

25  <u>Clara</u>, 307 F.3d 1119 (9th Cir. 2002).  There are two exceptions that prevent any extrinsic

26  evidence from converting the Rule 12(b)(6) motion into a summary judgment motion; materials

27  which are properly submitted as part of the complaint or "matters of public record" which may be

28  judicially noticed.  <u>Id.</u> at 688-89.  "If the documents are not physically attached to the complaint,

they may be considered if the documents' "'authenticity . . . is not contested' and 'the plaintiff's complaint necessarily relies' on them.'"  Id. at 688 (quoting Parrino v. FHP, Inc., 146 F.3d 699, 705-06 (9th Cir. 1998).

"A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."  Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).  In general, pro se pleadings are held to less stringent standards than those drafted by lawyers.  Haines v. Kerner, 404 U.S. 519, 520 (1972) (per curiam).  The court has an obligation to construe such pleadings liberally.  Bretz v. Kelman, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc).  However, the court's liberal interpretation of a pro se complaint may not supply essential elements of the claim that were not pled.  Ivey v. Board of Regents of Univ. of Alaska, 673 F.2d 266, 268 (9th Cir. 1982).

IV.   Discussion

    A.   Eighth Amendment Deliberate Indifference Claim

Plaintiff alleges that defendants were deliberately indifferent to his medical needs when they failed to treat his excruciating lower back pain, order him an earlier MRI, and refer him to a specialist when he initially complained of back pain.  (ECF No. 13; see also ECF No. 53.)  He also claims that Bobbala and Austin failed to intervene in training and failed to correct the misconduct that constituted cruel and unusual punishment under the Eighth Amendment.  (ECF No. 13.)  Defendants move to dismiss the complaint on the ground that plaintiff failed to allege sufficient facts to render his claim cognizable.  (ECF Nos. 43, 44-1, 54.)

The treatment a prisoner receives while incarcerated and the conditions of his confinement are subject to the Eighth Amendment.  Helling v. McKinney, 509 U.S. 25, 31 (1993); see also DeShaney v. Winnebago Cnty. Dep't of Soc. Servs., 489 U.S. 189, 198-200 (1989).  A prison official violates the Eighth Amendment when he acts with "deliberate indifference" to the serious medical needs of an inmate.  See Farmer v. Brennan, 511 U.S. 825, 828 (1994); Wilson v. Seiter, 501 U.S. 294, 297 (1991); Estelle v. Gamble, 429 U.S. 97, 104-05 (1976) ("This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally

interfering with the treatment once prescribed."); <u>Doty v. County of Lassen</u>, 37 F.3d 540, 546 (9th Cir. 1994). The Eighth Amendment's deliberate indifference standard is a "high legal standard." <u>See</u> <u>Toguchi v. Chung</u>, 391 F.3d 1051, 1060 (9th Cir. 2004). To state a claim, the prisoner must show that (1) objectively, the prison official's deprivation was sufficiently serious, and (2) subjectively, the prison official acted with sufficiently culpable state of mind. <u>See</u> <u>Farmer</u>, 511 U.S. at 834; <u>Wilson</u>, 501 U.S. at 298-99.

To meet the objective standard, the plaintiff must show that the medical need is serious. A medical need is serious "if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" <u>McGuckin v. Smith</u>, 974 F.2d 1050, 1059 (9th Cir. 1992) (citation omitted), <u>overruled on other grounds by</u> <u>WMX Techs., Inc. v. Miller</u>, 104 F.3d 1133 (9th Cir. 1997) (en banc). If a prisoner establishes the existence of a serious medical need, he must also meet the subjective standard, showing that prison officials responded to the serious medical need with deliberate indifference. <u>Farmer</u>, 511 U.S. at 834. In general, deliberate indifference may be shown when prison officials deny, delay, or intentionally interfere with medical treatment, or in the way prison officials provide medical care. <u>Hutchinson v. United States</u>, 838 F.2d 390, 394 (9th Cir. 1988). "A showing of medical malpractice or negligence is insufficient to establish a constitutional deprivation under the Eighth Amendment." <u>Toguchi</u>, 391 F.3d at 1060; <u>see also</u> <u>Hallett v. Morgan</u>, 296 F.3d 732, 744-45 (9th Cir. 2002).

At this stage, four of the defendants concede that plaintiff's back pain constitutes a serious medical need, satisfying the first prong of the deliberate indifference standard. (ECF No. 44-1 at 6.) This Court agrees and moves on to consider whether plaintiff has met the second prong of the test—whether the prison officials acted with a sufficiently culpable state of mind.

Accepting all factual allegations as true, this Court finds that plaintiff has not shown that defendants acted with a sufficiently culpable state of mind. Defendants Hlaing, Son, and Ikegbu medically examined plaintiff, ordered diagnostic tests, and treated his pain. First, Hlaing ordered an x-ray of plaintiff's lower back, prescribed Tylenol, and scheduled a follow up medical appointment. (ECF No. 19 at 12.) When plaintiff's pain worsened, Hlaing ordered a Toradol shot for the pain. (<u>Id.</u> at 13, 27.) Plaintiff saw Hlaing for a follow-up appointment a few weeks

7

1    later, and Hlaing ordered him another Toradol shot.  (<u>Id.</u> at 15.)  Although plaintiff still

2    experienced pain, the shot numbed his back and allowed him to walk back to his prison unit. (<u>Id.</u>;

3    <u>see also</u> <u>id.</u> at 27.)  Second, Son diagnosed plaintiff with degenerative joint disease and prescribed

4    Tylenol, capsaicin cream, and physical therapy.  (<u>Id.</u> at 13, 27, 30.)  He also gave plaintiff another

5    Toradol shot, which helped with the pain. (<u>Id.</u> at 14.)  Third, plaintiff saw Ikegbu twice in

6    October 2019.  During the first visit, Ikegbu told him he had degenerative disc disease and was

7    exaggerating his pain.  He explained that the MRI order was still pending and encouraged

8    plaintiff to drink more water and be more physical.  (<u>Id.</u> at 17-18, 38.)  On the second medical

9    visit, Ikegbu increased plaintiff's dosage for nortriptyline and added a topical nonsteroidal anti-

10   inflammatory drug, noting "that all available imaging studies at that time were showing

11   degenerative joint disease, with a pending MRI."  (<u>Id.</u> at 38.)  Lastly, Bobbala and Austin

12   thoroughly responded to plaintiff's medical care grievances.  (<u>Id.</u> at 16; <u>see also</u> <u>id.</u> at 25-27, 37-

13   39.)  Plaintiff does not allege that Bobbala or Austin denied, delayed, or interfered with his

14   medical treatment, or provided him medical care.[3]  Based on the complaint, plaintiff has not

15   plausibly alleged that the prison officials acted with sufficiently culpable state of mind.

16          Although plaintiff disagreed with the course of treatment, a mere difference in opinion

17   concerning the appropriate medical treatment cannot be the basis of an Eighth Amendment claim.

18   <u>Jackson v. McIntosh</u>, 90 F.3d 330, 332 (9th Cir. 1996), <u>overruled in part on other grounds</u>

19   <u>by</u> <u>Peralta v. Dillard</u>, 744 F.3d 1076 (9th Cir. 2014) (en banc).  When there are alternative courses

20   of medical treatment, plaintiff "must show that the treatment the doctors chose was medically

21   unacceptable under the circumstances" and that the doctors "chose this course in conscious

22   disregard of an excessive risk to plaintiff's health."  <u>Id.</u>  Plaintiff cannot meet this challenging

23   standard.  Here, at his first medical appointment regarding his low back pain, Hlaing ordered an

24   

25   [3] Plaintiff also alleges that Bobbala's and Austin's failure to intervene in changing policy,
     regulation, or training, or to correct misconduct also violated his Eighth Amendment rights.  (ECF

26   No. 19 at 17, 22.)  This claim fails because plaintiff does not identify any facts or policies,
     regulations, or training that constitute a constitutional violation.  Nor does plaintiff allege that

27   Bobbala or Austin had the authority to make such changes to prevent or mitigate his harm.  <u>See</u>
     <u>Iqbal</u>, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they

28   must be supported by factual allegations.")

1   x-ray, which was taken on July 26, 2019.  (ECF No. 19 at 26.)  Hlaing explained the results,

2   provided pain medication and a Toradol injection, and scheduled a follow-up appointment.  (Id. at

3   27.)  Defendant Son also treated plaintiff for degenerative disc disease.  (Id.)  Another non-

4   defendant ordered an MRI in September 2019, but it was delayed due to transfers between prison

5   institutions. (Id.)  While waiting for the MRI appointment, defendants continued to treat plaintiff

6   for degenerative disc disease based on the available medical records.  On October 24, 2019,

7   plaintiff's MRI indicated that he needed to be admitted to the hospital for treatment.  (Id. at 38.)

8   Plaintiff provides no support for his assertion that defendants' failure to order an MRI or refer

9   him to a specialist sooner was medically unacceptable under the circumstances or that their

10  failure to do so was in conscious disregard to an excessive risk to his health.  See Estelle, 429

11  U.S. at 107 ("But the question whether an X-ray or additional diagnostic techniques or forms of

12  treatment is indicated is a class example of a matter for medical judgment.  A medical decision

13  not to order an X-ray, or like measures, does not represent cruel and unusual punishment.");

14  Marshall v. Bulanon, 230 F.3d 1367 (9th Cir. 2000) (rejecting plaintiff's argument that a delay in

15  ordering an x-ray constituted deliberate indifference because there was no proof that later injury

16  resulted from a delay or earlier misdiagnosis).

17          To the extent plaintiff challenges Bobbala's and Austin's responses to his prison

18  grievances, this claim cannot succeed.  (ECF No. 19 at 16-17, 22.)  The Due Process Clause

19  protects plaintiff against the deprivation of liberty without due process under the law.  Wilkinson

20  v. Austin, 545 U.S. 209, 221 (2005).  However, there is no stand-alone due process claim for the

21  prison grievance process itself.  Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003); Mann v.

22  Adams, 855 F.2d 639, 640 (9th Cir. 1988).  A prison official's denial of a grievance does not

23  itself violate the constitution.  Evans v. Skolnik, 637 F. App'x 285, 288 (9th Cir. 2015).  Thus, the

24  denial of plaintiff's grievances cannot constitute a due process violation.  See, e.g., Bradway v.

25  Rao, 2020 WL 8919180, at *1 (E.D. Cal. July 15, 2020); Daniels v. Aguillera, 2018 WL 1763311

26  (E.D. Cal. Apr. 12, 2018) ("Because there is no right to any particular grievance process, it is

27  impossible for due process to have been violated by ignoring or failing to properly process prison

28  grievances."); Wright v. Shannon, 2010 WL 445203, at *5 (E.D. Cal. 2010).

1      B.  Qualified Immunity

2          In the alternative, defendants argue that they are entitled to qualified immunity.  (ECF No.

3    44-1 at 9-11.)  Qualified immunity shields officials from civil liability if their conduct "'does not

4    violate clearly established statutory or constitutional rights of which a reasonable person would

5    have known.'"  Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457

6    U.S. 800, 818 (1982)).  Because this Court finds that plaintiff failed to state a cognizable Eighth

7    Amendment claim, this Court does not decide whether qualified immunity provides an alternative

8    basis for dismissing the complaint.

9    V.    Conclusion

10         For the reasons sets forth above, the undersigned recommends plaintiff's amended

11   complaint be dismissed. While leave to amend should be freely granted, plaintiff has not

12   requested leave to amend, and any amendment would be futile due to the factual allegations in

13   and attached as exhibits to the amended complaint. Therefore, the undersigned recommends

14   that leave to amend should not be granted, and this case should be dismissed with prejudice.

15         Accordingly, IT IS HEREBY RECOMMENDED that:

16         1.   Defendants' motions to dismiss (ECF Nos. 43 & 44) be GRANTED;

17         2.   Plaintiff's complaint be DISMISSED WITH PREJUDICE.

18         3.   The Clerk of Court be directed to close this case.

19         These findings and recommendations are submitted to the United States District Judge

20   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen (14)

21   days after being served with these findings and recommendations, any party may file written

22   objections with the court and serve a copy on all parties. Such a document should be captioned

23   "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

24   shall be served on all parties and filed with the court within fourteen (14) days after service of the

25   objections.  The parties are advised that failure to file objections within the specified time may

26   ////

27   ////

28   ////

waive the right to appeal the District Court's order. <u>Turner v. Duncan</u>, 158 F.3d 449, 455 (9th Cir. 1998); <u>Martinez v. Ylst</u>, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

Dated:  September 29, 2022

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

ta/godo1938.mtd